IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN FREEDOM LAW CENTER**<br>1901 Pennsylvania Avenue NW, Suite 201<br>Washington, D.C. 20006<br><br>**ROBERT J. MUISE**<br>3000 Green Road #131098<br>Ann Arbor, Michigan 48113<br><br>       Plaintiffs,<br><br>   v.<br><br>**BARACK OBAMA**, in his official capacity as President<br>of the United States of America<br>1600 Pennsylvania Avenue, NW,<br>Washington, D.C. 20500<br><br>**UNITED STATES DEPARTMENT OF HEALTH<br>AND HUMAN SERVICES**<br>200 Independence Avenue, SW, Washington, DC 20201<br><br>**SYLVIA MATHEWS BURWELL**, in her official<br>capacity as Secretary, U.S. Department of Health &<br>Human Services<br>200 Independence Avenue, SW, Washington, DC 20201<br><br>**UNITED STATES DEPARTMENT OF THE<br>TREASURY**<br>1500 Pennsylvania Avenue, NW, Washington, DC 20220<br><br>**JACOB J. LEW**, in his official capacity as Secretary,<br>U.S. Department of the Treasury<br>1500 Pennsylvania Avenue, NW, Washington, DC 20220<br><br>**UNITED STATES DEPARTMENT OF LABOR**<br>200 Constitution Avenue, NW, Washington, DC 20210<br><br>**THOMAS E. PEREZ**, in his official capacity as<br>Secretary, U.S. Department of Labor<br>200 Constitution Avenue, NW, Washington, D.C. 20210<br><br>       Defendants. | **COMPLAINT** |

Plaintiffs, by and through undersigned counsel, bring this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof allege the following upon information and belief:

## INTRODUCTION

1.       As the U.S. Supreme Court affirmed in *Bond v. United States*, 131 S. Ct. 2355 (2011): "Separation-of-powers principles are intended, in part, to protect each branch of government from incursion by the others.  Yet the dynamic between and among the branches is not the only object of the Constitution's concern.  The structural principles secured by the separation of powers protect the individual as well. . . .  In the precedents of this Court, *the claims of individuals*—not of Government departments—have been the principal source of judicial decisions concerning separation of powers and checks and balances."  *Id.* at 2365 (emphasis added).

2.       The Framers of our Constitution perceived that "[the] accumulation of all powers legislative, executive and judiciary in the same hands, whether of one, a few or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny." *The Federalist No. 47*, p. 324 (J. Cooke ed. 1961) (J. Madison).

3.       As the U.S. Supreme Court just recently reaffirmed, "Were we to recognize the authority claimed by [the Executive Branch to modify an unambiguous law], we would deal a severe blow to the Constitution's separation of powers.  Under our system of government, Congress makes laws and the President, acting at times through [his executive agencies], 'faithfully execute[s]' them.  U. S. Const., Art. II, §3. . . .  The power of executing the laws necessarily includes both authority and responsibility to resolve some questions left open by Congress that arise during the law's administration.  But it does not include a power to revise

clear statutory terms that turn out not to work in practice." *Util. Air Regulatory Grp. v. EPA*, Nos. 12-1146, 12-1248, 12-1254, 12-1268, 12-1269, 12-1272, 2014 U.S. LEXIS 4377, at *40-*41 (U.S. June 23, 2014).

4.       America is and must remain "a nation of laws, not of men," as John Adams put it. Indeed, the Framers had in view the President's oath of allegiance to our system of government in which the President's *highest duty* is the faithful execution of the laws—laws that are appropriately passed by Congress pursuant to its constitutional authority.  *See* U.S. Const. art. I, §§ 1 & 8.  Indeed, the mere attempt to subvert the Constitution and its separation of powers principles would be a breach of trust warranting impeachment and removal.  In sum, a free country requires the rule of law.  But the rule of law is a sham if lawlessness is rampant among those who govern.  This was the deep political truth that the Framers recognized and thus made provisions for the impeachment of an errant executive.  *See* U.S. Const. art. II, § 4.  It is a truth that we ignore at our peril.  *See* Andrew C. McCarthy, *Faithless Execution* (2014).

5.       This civil action seeks to preserve those structural principles enshrined in our Constitution that are designed to protect private individuals from the tyranny of government, and in particular, from the tyranny of a single branch of government that seeks to usurp power and authority not permitted under the Constitution.  Thus, Plaintiffs challenge here the *ultra vires* actions of the Executive Branch regarding its refusal to "faithfully execute[]" the Patient Protection and Affordable Care Act, which was passed by Congress and signed into law in 2010. By executive fiat, President Obama has licensed prohibited conduct and has engaged in a policy-based, non-enforcement of federal law for an entire category of individuals and organizations subject to the law in direct violation of the United State Constitution.

6.      As set forth in this Complaint, Plaintiffs seek a declaration that Defendants' executive actions that directly conflict with the Affordable Care Act as passed by Congress and signed into law by President Obama in 2010 are unlawful and violate the separation of powers principles that are essential to our free republic.  Plaintiffs also seek a preliminary and permanent injunction enjoining their enforcement.

## JURISDICTION AND VENUE

7.      This action in which the United States is a defendant arises under the Constitution and laws of the United States.  Jurisdiction is conferred on this Court pursuant to 28 U.S.C. §§ 1331 and 1346.

8.      Plaintiffs' claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this Court.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) because Defendants reside in this district and a substantial part of the acts giving rise to Plaintiffs' claims occurred in this district.

## PARTIES

10.      Plaintiff American Freedom Law Center (AFLC) is a nonprofit corporation that has offices in Arizona, California, Michigan, New York, and Washington, D.C.  It is recognized by the Internal Revenue Service (IRS) as a 501(c)(3) organization.

11.      The mission of AFLC is "to fight for faith and freedom through litigation, education, and public policy programs."  To promote its mission, AFLC prosecutes cases to, *inter alia*, advance and defend religious liberty, freedom of speech, and the sanctity of human

life, and it crafts litigation to promote a limited government and a renewed federalism, which are necessary to protect and preserve freedom.

12.     Plaintiff Robert J. Muise is Co-Founder and Senior Counsel of AFLC.  He is an adult citizen of the United States and a resident of Michigan.  Plaintiff Muise receives health insurance for himself and his family through AFLC.

13.     Defendant Barack Obama is the President of the United States.  Pursuant to Article II of the Constitution, he is "vested" with the "executive power" and required to "take care that the laws be faithfully executed."  U.S. Const. art. II, §§ 1 & 3.  Accordingly, President Obama is responsible for the "faithful execut[ion]" of the Affordable Care Act as passed by Congress, and he "executes" the Act through his executive agencies, including the United States Department of Health and Human Services, the United States Department of the Treasury, and the United States Department of Labor.  Defendant Obama is sued in his official capacity only.

14.     Defendant United States Department of Health and Human Services is an executive agency of the United States government and is responsible for the administration and enforcement of the Affordable Care Act.

15.     Defendant Sylvia Mathews Burwell is the Secretary of the U.S. Department of Health and Human Services.  In this capacity, she has responsibility for the operation and management of the department, and this includes the administration and enforcement of the Affordable Care Act.  Defendant Burwell is sued in her official capacity only.

16.     Defendant United States Department of the Treasury is an executive agency of the United States government and is responsible for the administration and enforcement of the Affordable Care Act.

17.    Defendant Jacob J. Lew is the Secretary of the U.S. Department of the Treasury. In this capacity, he has responsibility for the operation and management of the department, and this includes the administration and enforcement of the Affordable Care Act.  Defendant Lew is sued in his official capacity only.

18.    Defendant United States Department of Labor is an executive agency of the United States government and is responsible for the administration and enforcement of the Affordable Care Act.

19.    Defendant Thomas E. Perez is the Secretary of the U.S. Department of Labor.  In this capacity, he has responsibility for the operation and management of the department, and this includes the administration and enforcement of the Affordable Care Act.  Defendant Perez is sued in his official capacity only.

## FACTUAL ALLEGATIONS

20.    In March 2010, President Obama signed into law the Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010), *amended by* Healthcare and Education Reconciliation Act of 2010, Pub. L. No. 111-152, 124 Stat. 1029 (2010) ("Affordable Care Act" or "Act").  The Affordable Care Act is often described as the President's signature piece of legislation.

21.    The Affordable Care Act requires, *inter alia*, each "applicable individual" to purchase health insurance ("Individual Mandate").  Individuals who fail to have "minimum essential coverage" required by this mandate must pay a "penalty."  *See* 26 U.S.C. § 5000A(b)(1).

22.    As set forth explicitly and unambiguously in the Act, the Individual Mandate was required to take effect on January 1, 2014.  26 U.S.C. § 5000A(a) ("An applicable individual

*shall for each month beginning after 2013* ensure that the individual, and any dependent of the individual who is an applicable individual, is covered under minimum essential coverage for such month.") (emphasis added).

23.     As support for the Individual Mandate, Congress made the following findings: "By significantly increasing health insurance coverage, the requirement, together with the other provisions of this Act, will *minimize* this *adverse selection* and *broaden the health insurance risk pool to include healthy individuals*, *which will lower health insurance premiums*. *The requirement is essential to creating effective health insurance markets* in which improved health insurance products that are guaranteed issue and do not exclude coverage of pre-existing conditions can be sold. . . .   Administrative costs for private health insurance, which were $90,000,000,000 in 2006, are 26 to 30 percent of premiums in the current individual and small group markets.  By significantly increasing health insurance coverage *and the size of purchasing pools*, *which will increase economies of scale*, the requirement, together with the other provisions of this Act, *will significantly reduce administrative costs and lower health insurance premiums*.  The requirement is *essential* to creating *effective health insurance markets* that do not require underwriting and eliminate its associated administrative costs."  42 U.S.C. § 18091(2)(I) & (J) (emphasis added).

24.     The Act calls the Individual Mandate "an essential part" of the federal regulation of health insurance and warns that "the absence of the requirement would undercut Federal regulation of the health insurance market."  42 U.S.C. §18091(2)(H).

25.     Consequently, through the universal and equitable enforcement or "execution" of the Individual Mandate, Congress sought to ensure that those who purchase (and, in particular, those who are required to purchase, such as Plaintiff Muise) health insurance pursuant to the Act

would directly benefit from "lower health insurance premiums" and not be burdened by the inevitably higher costs associated with purchasing and maintaining the "minimum essential coverage" required by the Act.  Thus, as Congress made explicit and unambiguous in the Act, the Individual Mandate is an *essential* component of the Affordable Care Act.

26.     Understanding the importance of the Individual Mandate to the Affordable Care Act, Congress was certain to make explicit and unambiguous in the Act those few, limited categories of individuals who were exempt from the mandate's requirement to purchase "minimum essential coverage."  *See, e.g.*, 26 U.S.C. § 5000A(d)(2)(a)(i) and (ii) (providing that the mandate does not apply to members of a "recognized religious sect or division" that conscientiously objects to acceptance of public or private insurance funds); § 5000A(d)(2)(a)(ii) (providing that the mandate does not apply to members of a "health care sharing ministry" that meets certain criteria);  § 5000A(d)(3) (providing that the mandate does not apply to "[i]ndividuals not lawfully present"); § 5000A(d)(4) (providing that the mandate does not apply to "[i]ncarcerated individuals").  None of these exemptions apply to Plaintiffs.

27.     The Affordable Care Act also does not apply to so-called "grandfathered" health care plans.  The Act's default position, however, is that an existing health care plan is *not* a grandfathered plan.  *See* 42 U.S.C. § 18011(a)(2); 26 C.F.R. § 54.9815-1251T; 29 C.F.R. § 2590.715-1251; 45 C.F.R. § 147.140.

28.     Consequently, President Obama's claim in 2013 to the American people that if "you like your health care plan, you can keep it" was contrary to the clear and unambiguous language of the Act.  In fact, the Pulitzer Prize winning PolitiFact.com declared President Obama's promise to be the "lie of the year" for 2013.

29.     Indeed, in October 2013, the Department of Justice filed a brief in this Court, stating that "[the Affordable Care Act's] grandfathering provision's incremental transition does not undermine the government's interests in a significant way.  Even under the grandfathering provision, it is projected that more group health plans will transition to the requirements under the regulations as time goes on.  Defendants have estimated that *a majority of group health plans* will have *lost* their grandfather status *by the end of 2013*."  (emphasis added).  Defs.' Mem. in Supp. of Opp'n to Pls.' Mot. for Summ. J. at 27, *Priests for Life v. U.S. Dep't of Health & Human Servs.*, No. 1:13-cv-1261-EGS (D.D.C. Oct. 17, 2013), ECF No. 14-2.

30.     Plaintiffs' health care plan is not a grandfathered plan under the Affordable Care Act.  Indeed, the plan did not exist prior to March 23, 2010.

31.     As a direct result of the Affordable Care Act, in 2013 millions of Americans received notices that their health insurance was cancelled.  This caused a political firestorm because it was contrary to President Obama's public promise to the American people.

32.     Consequently, as a politically expedient measure, President Obama engaged in a series of executive actions that materially altered the Affordable Care Act without approval from Congress.

33.     By executive fiat, Defendants altered the requirements of the Affordable Care Act and thus established with an unconstitutional and illegal claim of executive authority that otherwise-prohibited conduct—in particular, maintaining *non-compliant* health care plans—will not violate the Act, in direct violation of the separation of powers set forth in the United States Constitution.

34.     In November 2013, and in response to the political fallout associated with the cancellation of health insurance for millions of Americans as a result of the Affordable Care Act,

President Obama announced a "transitional policy" that would allow, via executive fiat, millions of Americans whose insurance companies cancelled their health care coverage to remain in their non-compliant plans contrary to the express and unambiguous language, purpose, and intent of the Affordable Care Act.

35.     President Obama's unlawful "transitional policy" was detailed in a November 14, 2013, letter sent to state insurance commissioners by the Director of the Center for Consumer Information and Insurance Oversight, which is part of the Department of Health and Human Services.  Through executive fiat, President Obama unilaterally changed the Affordable Care Act by declaring that health insurance policies that were not in compliance with the clear and unambiguous language of the Act were now in compliance, thereby effectively repealing the Affordable Care Act for millions of Americans, but not for others, including Plaintiffs.

36.     In this letter, President Obama, through his executive agency, the Department of Health and Human Services, acknowledged that "[s]ome individuals and small businesses with health insurance coverage have been notified by their health insurance issuers that their coverage will soon be terminated.  We understand that, in some cases, the health insurance issuer is terminating or cancelling such coverage because it would not comply with certain market reforms that are scheduled to take effect for plan or policy years starting on or after January 1, 2014"—"market reforms" mandated by the Affordable Care Act.  Consequently, by executive fiat and contrary to the express and unambiguous language of the Act, Defendants authorized "health insurance issuers . . . to continue coverage that would otherwise be terminated or cancelled" for failing to comply with the Act and further permitted, without authority and contrary to the Act, "affected individuals and small businesses . . . to re-enroll in such coverage." The letter further states that "[u]nder this transitional policy, health insurance coverage in the

individual or small group market that is renewed for a policy year starting between January 1, 2014, and October 1, 2014, and associated group health plans of small businesses, will not be considered out of compliance" with the Affordable Care Act in direct contravention to the clear and unambiguous language of the Act.  The letter also states that "[w]e will consider the impact of this transitional policy in assessing whether to extend it beyond the specified timeframe."

37.    On December 19, 2013, and pursuant to executive action, the Department of Health and Human Services, through the Center for Consumer Information and Insurance Oversight, issued another directive that is contrary to the clear and unambiguous language of the Affordable Care Act.  This directive, which is separate from the unlawful "transitional policy," provides a further exemption from the penalty for not having health insurance for consumers whose policies will not be renewed because they do not comply with the Affordable Care Act. This directive states, in relevant part, that "[i]f you have been notified that your policy will not be renewed, you will be eligible for a hardship exemption and will be able to enroll in catastrophic coverage.  If you believe that the plan options available in the Marketplace in your area are more expensive than your cancelled health insurance policy, you will be eligible for catastrophic coverage if it is available in your area.   In order to purchase this catastrophic coverage, you need to complete a hardship exemption form, and indicate that your current health insurance policy is being cancelled and you consider other available policies unaffordable."  To take advantage of this unlawful policy, an insured must "submit the following items to an issuer offering catastrophic coverage in your area: (1) the hardship exemption form; and (2) supporting documentation indicating that your previous policy was cancelled."

38.    On March 5, 2014, the Director of the Center for Consumer Information and Insurance Oversight confirmed the "transitional policy" previously announced by President

Obama by which the President is revising the clear statutory terms of the Affordable Care Act by licensing prohibited conduct and engaging in a policy-based non-enforcement of the Act for an entire category of offenders in violation of the United States Constitution.

39.     Moreover, in the March 5th letter, the Director, on behalf of Defendants, stated, "We have considered the impact of the transitional policy and will extend our transitional policy for two years—to policy years beginning on or before October 1, 2016, in the small group and individual markets."  Thus, Defendants' unlawful revision and modification of the Act extends to 2016.

40.     The March 5th letter concludes by stating, "On December 19, 2013, CMS issued guidance indicating that individuals whose policies are cancelled because the coverage is not compliant with the Affordable Care Act qualify for a hardship exemption if they find other options to be more expensive, and are able to purchase catastrophic coverage.  This hardship exemption will continue to be available until October 1, 2016, for those individuals whose non-compliant coverage is cancelled and who meet the requirements specified in the guidance."  Thus, Defendants extended their unlawful "hardship exemption" until October 1, 2016—an exemption that is contrary to the express and unambiguous purpose, intent, and language of the Affordable Care Act.

41.     As part of its religious commitment grounded in Judeo-Christian social teaching, AFLC promotes the physical and spiritual health and well-being of its employees.  As part of this commitment, AFLC ensures that its employees and their families have health insurance.

42.     AFLC provides health insurance to Plaintiff Muise via a group plan purchased through Blue Cross and Blue Shield.  Plaintiff Muise makes monthly contributions to help subsidize the costly health care plan purchased by AFLC.

43.     AFLC's next plan year will commence in December 2014.

44.     AFLC provides its employees with health insurance that is compliant with the Affordable Care Act as passed by Congress and signed into law by President Obama.  By doing so, AFLC ensures that its employees are abiding by the law and will not be subject to penalty for failing to have an insurance policy that is not compliant with the Act.  Indeed, an "applicable individual," such as Plaintiff Muise, satisfies the "minimum essential coverage" requirement as set forth in the express and unambiguous language of the Act if he has an "eligible employer-sponsored plan."   26 U.S.C.  §  5000A(f)(1)(B).   AFLC's health care plan is an "eligible employer-sponsored plan" under the Act.

45.     AFLC's health care plan is and will continue to be compliant with the Affordable Care Act as passed by Congress and signed into law by President Obama.  Because of the Affordable Care Act and Plaintiffs' desire and intention to abide by federal law as validly passed pursuant to the requirements and safeguards of the United States Constitution, AFLC's health insurance premiums and thus Plaintiff Muise's contribution to those premiums are higher than if they were permitted to thwart the clear and unambiguous language of the Act and choose their own, non-compliant health care plan.  Thus, complying with the "minimum essential coverage" requirement as set forth in the clear and unambiguous language of the Act is imposing a financial burden upon, and thus a direct economic injury to, Plaintiffs.

46.     Congress's explicit findings make clear that as the pool of "applicable individuals" who are required to purchase "minimum essential coverage" pursuant to the unambiguous language of the Affordable Care Act is reduced, as President Obama has done through his unlawful executive actions, the direct effect of this action is to financially burden those who do maintain "minimum essential coverage" pursuant to the Act, specifically including

Plaintiffs, who are now suffering an economic injury directly related to Defendants' unlawful actions.

47.     AFLC has no legal basis for terminating Plaintiff Muise's health care plan.  As a law-abiding organization, AFLC will comply with the law as passed by Congress and signed by President Obama.  To be eligible for the so-called "transitional policy," which President Obama unlawfully created via executive action, Plaintiffs would have to make materially false statements to the government, which they cannot and will not do.

48.     If AFLC terminated Plaintiff Muise's health care plan, Plaintiff Muise would be required under the Individual Mandate as passed by Congress and signed by President Obama to purchase a costly individual plan or else he would be subject to the mandate's penalty, which, as a law-abiding citizen, he would pay.  Plaintiff Muise is an "applicable individual" under the Act, and he is not qualified for any exemption from the Individual Mandate penalty.

49.     Because President Obama's executive actions which permit some individuals and small businesses to maintain non-compliant health care plans in 2014 and beyond without being subject to penalty are unlawful, Plaintiffs cannot and will not go along with these *ultra vires* actions, resulting in higher costs and thus a financial burden imposed upon Plaintiffs, thereby causing an economic injury as a direct result of President Obama's unlawful alterations of the statutory language of the Affordable Care Act.

50.     By altering the clear and unambiguous statutory requirements of the Affordable Care Act, including the Act's "essential" component, and thus establishing with an unconstitutional and illegal claim of executive authority that otherwise-prohibited conduct will not violate the Act, Defendants have directly harmed law-abiding citizens, including Plaintiffs, and violated the United States Constitution.

51.     Defendants' unlawful actions have destroyed the structural principles secured by the Constitution's separation of powers, which are designed to protect individuals, including Plaintiffs, from unlawful government action, thereby causing irreparable harm.

## FIRST CLAIM FOR RELIEF

### (Article II, Section 3 — Failure to Faithfully Execute the Laws)

52.     Plaintiffs hereby incorporate by reference all stated paragraphs set forth herein.

53.     Article II, Section 3 requires the President to "take care that the laws be faithfully executed." U.S. Const. art. II, § 3. The language in this Section is mandatory.

54.     Defendants' failure to faithfully execute the Affordable Care Act as set forth in this Complaint violates Article II, Section 3 of the United States Constitution and the separation of powers principles set forth therein.

55.     Defendants' violation of Article II, Section 3 has caused and will continue to cause Plaintiffs to suffer undue hardship and irreparable injury.

## SECOND CLAIM FOR RELIEF

### (Article I, Sections 1 & 8—Unlawful Execution of Legislative Powers)

56.     Plaintiffs hereby incorporate by reference all stated paragraphs set forth herein.

57.     Article I, Section 1 states, "*All legislative powers* herein granted shall be vested in a Congress of the United States, which shall consist of a Senate and House of Representatives." U.S. Const. art. I, § 1 (emphasis added). Moreover, Article I, Section 8, clause 18 provides that Congress has the plenary authority "[t]o make *all laws* which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers of the United States, or in any Department or Office thereof." U.S. Const. art. I, § 8, cl. 18 (emphasis added). If the President does not want to faithfully execute a law that is validly passed by Congress, his authority to do

so resides solely in his authority to veto that law as provided in Article I, Section 7, clause 2, which states that "[e]very bill which shall have passed the House of Representatives and the Senate, shall, before it becomes a law, be presented to the President of the United States; if he approves he shall sign it, but if not he shall return it, with his objections to that House in which it shall have originated, who shall enter the objections at large on their journal, and proceed to reconsider it."  U.S. Const. art. I, § 7, cl. 2.

58.     President Obama signed the Affordable Care Act into law on March 10, 2013. Thus, on March 10, 2013, the President approved the Act as drafted and presented to him by Congress, thereby making it the law of the land.

59.     Through unlawful executive action, President Obama and his executive agencies, including the Departments of Health and Human Services, Treasury, and Labor, unilateral rewrote and modified the Affordable Care Act as set forth in this Complaint in direct violation of Article I, Sections 1 and 8 of the United States Constitution and the separation of powers principles set forth therein.

60.     Defendants' violation of Article I, Sections 1 and 8 has caused and will continue to cause Plaintiffs to suffer undue hardship and irreparable injury.

### THIRD CLAIM FOR RELIEF

#### (Equal Protection — Violation of the Fifth Amendment)

61.     Plaintiffs hereby incorporate by reference all stated paragraphs set forth herein.

62.     By exempting some applicable individuals from the Individual Mandate but not others, including Plaintiffs, on a basis that violates the Constitution, Defendants have deprived Plaintiffs of the equal protection of the law guaranteed under the Fifth Amendment to the United States Constitution.

63.     Defendants' discriminatory treatment of applicable individuals, including Plaintiffs, is not legitimate because it was based on President Obama's failure to faithfully execute the Affordable Care Act and Defendants' unlawful revision of clear statutory terms in violation of the separation of powers set forth in the Constitution.    Thus, Defendants' discriminatory treatment of Plaintiffs is *per se* unlawful and cannot survive the rational basis test.

64.     Defendants' violation of the Fifth Amendment has caused and will continue to cause Plaintiffs to suffer undue hardship and irreparable injury.

## FOURTH CLAIM FOR RELIEF

### (Violation of the Administrative Procedures Act)

65.     Plaintiffs hereby incorporate by reference all stated paragraphs set forth herein.

66.     Because the Affordable Care Act itself does not specify a standard for judicial review, it is subject to review under the default standard of the Administrative Procedures Act.  5 U.S.C. § 706(2).

67.     The Administrative Procedures Act requires general notice of a proposed rulemaking and an opportunity for public comment before promulgation of a rulemaking, unless the agency, for good cause, finds that notice and public comment thereon are impracticable, unnecessary, or contrary to the public interest.  5 U.S.C. § 551, *et seq*.

68.     The executive actions and the promulgation of news rules as set forth in this Complaint were not adopted pursuant to the notice-and-comment procedures of the Administrative Procedures Act.  Moreover, this agency action, as set forth in this Complaint, violates the separation of powers of the United States Constitution.

69.     Because Defendants took agency action "not in observance of procedure required by law," Plaintiffs are entitled to relief under 5 U.S.C. § 706(2)(D).

70.    Because Defendants took agency action that was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," Plaintiffs are entitled to relief under 5 U.S.C. § 706(2)(A).

71.    Because Defendants took agency action that was "contrary to constitutional right, power, privilege, or immunity," Plaintiffs are entitled to relief under 5 U.S.C. § 706(2)(B).

72.    Because Defendants took agency action that was "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," Plaintiffs are entitled to relief under 5 U.S.C. § 706(2)(C).

73.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their constitutional and statutory rights.

74.    Defendants' violation of the Administrative Procedures Act has caused and will continue to cause Plaintiffs to suffer undue hardship and irreparable injury.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment as follows:

A.    That this Court declare that the challenged executive actions set forth in this Complaint violate the United States Constitution and the Administrative Procedures Act;

B.    That this Court preliminarily and permanently enjoin the challenged executive actions set forth in this Complaint;

C.    That this Court award Plaintiffs their reasonable costs, including attorneys' fees, pursuant to 28 U.S.C. § 2412, 5 U.S.C. § 504, and the general legal and equitable powers of this Court;

D.    That this Court grant such other and further relief as it deems equitable and just under the circumstances.

Respectfully submitted,

**AMERICAN FREEDOM LAW CENTER**

/s/ Robert J. Muise
Robert J. Muise, Esq. (D.C. Court Bar No. MI 0052)
P.O. Box 131098
Ann Arbor, Michigan 48113
Tel: (734) 635-3756
rmuise@americanfreedomlawcenter.org

/s/ David Yerushalmi
David Yerushalmi, Esq. (DC Bar No. 978179)
1901 Pennsylvania Avenue NW
Suite 201
Washington, D.C. 20006
dyerushalmi@americanfreedomlawcenter.org
(646) 262-0500

*Counsel for Plaintiffs*